IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEROMY ROBERTS, | ) | |
| ID # 59855, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 3:14-CV-812-N-BH |
| | ) | |
| BRANDON KIRKPATRICK, et al. | ) | |
| Defendants. | ) | Referred to U.S. Magistrate Judge |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this *pro se* prisoner case has been automatically referred for pretrial management. Based on the relevant filings and applicable law, all of the plaintiff's claims should be summarily **DISMISSED** with prejudice, except for his search and seizure claim and failure to supervise claim.

I. BACKGROUND

While an inmate in the Hunt County Jail,[1] Jeromy Roberts (Plaintiff) filed this action under 42 U.S.C. § 1983 against West Tawakoni Police Department Chief Brandon Kirkpatrick and Police Officers Tyler Oakley and Charles Dominguez (collectively West Tawakoni Defendants) in their individual capacities. (doc. 3 at 1, 3-4; doc. 8 at 1-5.)[2] Plaintiff alleges that on October 4, 2013, he was a passenger in a vehicle stopped by Officers Dominguez and Oakley. (doc. 3 at 4; doc. 8 at 3-4.) The officers allegedly searched the vehicle without a warrant and found drug paraphernalia, so they detained both occupants and took them to the Hunt County Jail, where they strip searched them. (doc. 3 at 4.) Plaintiff claims that although drugs were found on the driver, and nothing was found

---

[1] Plaintiff is currently incarcerated in the Van Zandt County Jail.

[2] Plaintiff's answers to the Court's questionnaires, (docs. 8, 21), constitute amendments to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

on him, the officers charged him with possession of a controlled substance and possession of narcotic paraphernalia. (*Id.*; doc. 8 at 6-10.) He was later also charged with theft. (doc. 21 at 5.)

Plaintiff alleges that Officer Dominguez is Plaintiff's wife's ex-boyfriend, that he disagrees with their marriage, and that he had "verbally threatened to send him back to prison on a few separate instances". (doc. 3. at 4.) He claims that Officer Oakley participated in Officer Dominguez' violations of Plaintiff's civil rights, and that Chief Kirkpatrick (who is married to Plaintiff's wife's cousin) refused to investigate his complaints against the officers despite his knowledge of Officer Dominguez' issues with Plaintiff. (*Id.* at 4, 6; doc. 8 at 5.) Plaintiff seeks monetary damages from all three defendants, and to have them suspended. (doc. 3 at 4; doc. 8 at 1-4.)

Plaintiff also sues Hunt County Jail Administrator Grinager, Sheriff Meeks, Captain Stevens, Sergeant Hancock, and Sergeant Akers (collectively, Hunt County Defendants). (doc. 3 at 12.) He claims that he had no access to law books at the Hunt County Jail, which deprived him of his right to research statutes or his civil suit and case law for his criminal cases. (docs. 3 at 12; doc. 8 at 13-14.) Plaintiff alleges that attorney Frederick Shelton was appointed for the bond proceedings, but that he was "not over my cases." (doc. 8 at 12.)  Plaintiff contends he is no longer detained on the possession of a controlled substance charge or on a theft charge, and that he was made to pay a fine on the possession of narcotic paraphernalia charge. (doc. 21 at 2-5.) He also claims that he remains detained pending revocation of parole as a result of the charges. (doc. 21 at 7.) No process has been issued in this case.

## II.  PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject

to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80

(5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also sub-

ject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte*

dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if

it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a

defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on

an indisputably meritless legal theory."  *Id.* at 327.  A complaint fails to state a claim upon which

relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949 (2009).

### III.  SECTION 1983

Plaintiff seeks monetary damages under 42 U.S.C. § 1983.  Section 1983 "provides a federal

cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immun-

ities secured by the Constitution and laws' of the United States."  *Livadas v. Bradshaw*, 512 U.S.

107, 132 (1994).  It "afford[s] redress for violations of federal statutes, as well as of constitutional

norms."  *Id.*  To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been

deprived of a right secured by the Constitution and the laws of the United States; and (2) the

deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155

(1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A.      **Hunt County Defendants**

Plaintiff complains that several officials at the Hunt County Jail denied him access to a law library, case law and statutes.

Prisoners have a constitutionally recognized right to access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).[3]  This includes either "adequate law libraries or adequate assistance from persons trained in the law" *Id.* at 828.   The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996).

To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See id.*; *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access).[4] The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983.  *Id.* at 353–54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). As the right of

---

[3]  *See also Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741 (1983)("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"); *Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir. 1993)("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses")(quoting *Chrissy F. v. Mississippi Dept. Of Public Welfare,* 925 F.2d 844, 851 (5th Cir. 1991)).

[4]  *See also Chriceol v. Phillips,* 169 F.3d 313, 317 (5th Cir. 1999)(inmate alleging denial of access to courts must demonstrate actual injury)((citing *Ruiz v. United States,* 160 F.3d 273,275 (5th Cir. 1998)(holding that a prisoner cannot prevail on an access-to-the-courts claim without proof of actual injury )); *see also McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998) (noting that a plaintiff must show prejudice to his position as a litigant)(citations omitted).

access to the courts is not a "freestanding right," it is necessary that he demonstrate actual injury resulting from the alleged denial of access. *Id.* at 351. Without a showing of an actual injury, plaintiffs lack standing to pursue claimed denials of access to courts. *Id.* at 349. This requires a plaintiff to allege, at a minimum, that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quotation omitted). A plaintiff must describe the claim well enough to establish that its "arguable nature ... is more than hope." *Id.* at 416 (internal quotation marks omitted).

A plaintiff represented by court-appointed counsel has no constitutional right of access to a law library. *See Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996)("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained n the law") (citation omitted); *see also Caraballo v. Fed. Bureau of Prisons,* 124 F. App'x 284, 285 (5th Cir. 2005) (holding that because plaintiff had court-appointed counsel, he had no constitutional right of access to the law library to help prepare his defense, and therefore failed to state a claim upon which relief may be granted).

According to Plaintiff, he was arrested on October 4, 2013, "bonded out" on October 5, 2013, and was booked into the Hunt County Jail on January 30, 2014. (doc. 8 at 10.)  He acknowledges that an attorney was appointed to represent him on February 12, 2014. (doc. 8 at 10.) The alleged restrictions on Plaintiff's access to a law library did not violate the right of access to court while he was represented by counsel.

Plaintiff has also wholly failed to allege any specific harm.  In describing how the lack of law library access affected his ability to pursue a legal claim, he wrote:

> I am a layman at law. Denial and refusal of a library kept me from looking up salutes and other big words you provide and try to confuse me with for purpose I would only guess to delay the procedures and hearing to support your own systems. I should have a lawyer by now and still you question me knowing I have no clue.

(doc. 21 at 8.)  He provided no additional facts.  (Id. at 9.)  Plaintiff has failed to allege any conduct by any defendant that amounted to a denial of his constitutional right to access to courts that hindered his ability to file a nonfrivolous claim. He has therefore failed to state a plausible claim that any of the Hunt County Defendants impaired his access to courts, and Plaintiff's claims against Jail Administrator Grinager, Sheriff Meeks, Captain Stevens, Sergeant Hathcock, and Sergeant Akers should be dismissed.

**B.      West Tawakoni Defendants**

Plaintiff alleges that the officers searched the vehicle in which he was a passenger without a warrant, they charged him with possession of narcotics even though they knew that he was only a passenger, and the chief failed to investigate his complaints regarding the officers' conduct.  (*Id.* at 4, 6.)  Plaintiff's allegations against the officers implicate the Fourth Amendment of the United States Constitution.  He also expressly alleges that all three West Tawakoni Defendants violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.  (doc. 8 at 1-5; doc. 21 at 3-5.)

*1.      Fourth Amendment*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. Generally, a search or seizure without probable cause or a warrant is a violation of the Fourth Amendment.  *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir.2000); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir.1994) ("The right to be free from arrest without probable cause is a clearly

6

established constitutional right."). Detaining a vehicle and its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

To analyze the legality of a traffic stop, the Fifth Circuit applies the two-part test set out in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Pack*, 612 F.3d at 349-50. First, courts determine whether the initial traffic stop was justified. *Id.* at 350. Upon finding that the stop was justified, courts then determine whether the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to initiate the stop. *Id.*

As noted, Plaintiff alleges that Officer Dominguez had verbally threatened to send Plaintiff back to prison because he is Plaintiff's wife's ex-boyfriend, and that he initiated the traffic stop. (doc. 3 at 3, 4.) He claims the officers searched the vehicle in which he was a passenger without a warrant, searched him at the scene, strip-searched him at the police department, found nothing on his person, but allegedly found something in the car and "put it on me." (doc. 3. at 4.) Plaintiff alleges that Oakley participated in the violation of his rights because he allowed Dominguez to "take his personal issues and twist the law" and to charge Plaintiff for something even though he had been searched twice and nothing was found. (docs. 3 at 6; 8 at 3.) These factual allegations are sufficient to state a claim under the Fourth Amendment against the officers.

### 2. *Fifth Amendment*

The Supreme Court and the Fifth Circuit have held that a challenge to the constitutionality of an arrest is analyzed under the Fourth Amendment's reasonableness standard rather than the due process clauses of the Fifth and Fourteenth Amendments. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1007 (5th Cir.2003). In addition, The Fifth

Amendment applies only to violations of constitutional rights by the United States or a federal government official. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)). Plaintiff has not claimed that the West Tawakoni Defendants were acting under color of federal law, and his claims under the Fifth Amendment must be dismissed.

### 3.      Sixth Amendment

Plaintiff also claims that the West Tawakoni Defendants violated his rights under the Sixth Amendment. It provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. CONST. Amend VI. None of the facts alleged by Plaintiff relate to any of the clauses of the Sixth Amendment. He has failed to state a claim under this Amendment.

### 4.      Eighth Amendment

Plaintiff also refers to the Eighth Amendment, but he makes no complaint against the West Tawakoni Defendants about the manner of detention.

A pretrial detainee's constitutional rights related to conditions of confinement "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment" rather than from the prohibition against cruel and unusual punishment contained within the Eighth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Since basic human needs such as

medical care are the same for pretrial detainees and convicted inmates, however, the same standards apply under both amendments. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001). "'The primary purpose of [the Cruel and Unusual Punishments] clause has always been considered . . . to be directed at the method or kind of punishment imposed for the violation of criminal statues . . . .'" *Ingraham v. Wright*, 430 U.S. 651, 667 (1977) (quoting *Powell v. Texas*. 392 U.S. 514, 531-32 (1968)).

Here, Plaintiff complains about the fact of his detention, rather than the conditions of his housing. He fails to state a claim under either the Eighth or Fourteenth Amendment regarding to his conditions of confinement, and any such claims should also be dismissed.

### 5.    *Fourteenth Amendment*

Plaintiff repeatedly lists the Fourteenth Amendment as one of his rights that was violated, but his claim is that he was "illegally restrained of his liberty without proper due process." (doc. 8 at 1, 3 and 4.) As noted above, a challenge to the constitutionality of an arrest is analyzed under the Fourth Amendment's reasonableness standard rather than the due process clauses of the Fifth and Fourteenth Amendments. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1007 (5th Cir.2003). Because Plaintiff's reliance on the Fourteenth Amendment stems from his complaints about the legality of his arrest and detention, his Fourteenth Amendment due process claims must also be dismissed.

### C.    **The Chief**

Plaintiff's allegations that Chief Kirkpatrick refused to investigate his complaints against the officers despite his knowledge of Officer Dominguez' issues with Plaintiff may be liberally construed as a claim that he failed to supervise the officers.

Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). There must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).

To establish liability on a failure to supervise or train claim, "the plaintiff must show that (1) [the supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir.2005). A negligent failure to train is insufficient; a plaintiff must show that the failure to train was done with "deliberate indifference" to his rights. *See Brd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997) ("A showing of simple or even heightened negligence will not suffice."). A showing of deliberate indifference usually requires "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights[.]" *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis*, 406 F.3d at 381.

10

Courts have consistently held that knowledge may be imputed to a supervisory official only in those cases where there is evidence of a history of widespread abuse, "and even then only when there is a causal connection between the failure to supervise or train and the constitutional violation, and the failure to supervise or train amounts to deliberate indifference." *Batiste v. City of Beaumont*, 421 F.Supp.2d 1000, 1006 (E.D. Tex. 2006). Plaintiffs must at least present evidence showing a pattern of similar violations. *See Estate of Davis*, 406 F.3d at 381; *Thompson*, 245 F.3d at 459. A single incident of an alleged constitutional violation may serve as a basis for liability, however, if a plaintiff "prove[s] that the 'highly probable' consequence of a failure to train [or supervise] would result in the specific injury suffered, and that the failure to train [or supervise] represents the moving force behind the [c]onstitutional violation." *Estate of Davis*, 406 F.3d at 385-86. To prove the existence of deliberate indifference, Plaintiff must present evidence that Chief Kirkpatrick had notice of a pattern of *similar violations* in the past but failed to train or supervise, or that the highly predictable consequence of his failure to train or supervise was the injury to Plaintiff. *See id.* at 381-86; *Thompson*, 245 F.3d 458-59.

Here, Plaintiff's factual allegations that Chief Kirkpatrick knew of Officer Dominguez's prior threats towards Plaintiff, failed to address that threat, and failed to address complaints filed against Dominguez, both before and after the arrest event, state a plausible claim for relief on the basis that the Chief's failure to supervise the officer resulted in injury to Plaintiff. *See Bell. Atlantic Corp.*, 550 U.S. at 570 (complaint must provide "enough facts to state a claim to relief that is plausible on its face"). He has sufficiently alleged that the Chief acted with deliberate indifference because he was both aware of facts from which the inference could be drawn that a substantial risk of serious harm towards Plaintiff existed, and that he drew that inference. *Estate of Davis*, 406 F.3d

11

at 381.  First, Plaintiff alleges that Chief Kirkpatrick was present when Officer Dominguez verbally threatened to send Plaintiff back to prison prior to the October 4, 2013 arrest.  (doc. 3, at 4.)  Plaintiff also claims that the Chief "has acknowledged the arguments between me and his deputies [sic] Charles Dominguez #601 in the past, cause of the unneccesary [sic] threats Mr. Dominguez has made cause of a relationship he once had with my wife."  (Doc. 8, at 5.)  Plaintiff also alleges the Chief had a personal family connection with Plaintiff, and that "knowing his wife and my wife are cousins, so even though he wasn't there that night he's just as guilty for allowing his deputy to harass me and deprive me of my freedom." (doc. 8, at 5.)  Plaintiff also claims that the Chief  "knew cause of a formal complaint that was written. [sic]  Still didn't follow up on it knowing we were having issues before the night of the arrest." (doc. 8, at 1.)  Plaintiff also alleges that "I know for a fact multiple complaints has [sic] been filed against Mr. Dominguez and the Chief refuses to follow up on it." (doc. 8, at 5.)  He claims that a "formal complaint was given to the Chief cause of the night of Oct. 4, 2013. He would not follow up on it." (doc. 8, at 5.)  He also alleges that the Chief allowed his officers to "run amuck and [let] his officers run a vigilante like department and take their personal issues with individual members of the community."  (*Id.* at 2.)

Plaintiff has sufficiently alleged personal awareness by the Chief of prior threats by Officer Dominguez towards Plaintiff, combined with allegations that he failed to address multiple complaints against Officer Dominguez, both before and after Plaintiff's arrest, to state a claim that the Chief was "deliberately indifferent" to Officer Dominguez's  violation of Plaintiff's constitutional rights. *See Estate of Davis,* 406 F.3d at 381-86. Plaintiff's factual allegations are therefore sufficient to survive preliminary screening on his claim against the Chief for failing to supervise Officer Dominguez.

12

## IV.  RECOMMENDATION

All of Plaintiff's claims against Jail Administrator Grinager, Sheriff Meeks, Captain Stevens, Sergeant Hathcock, and Sergeant Akers, and all claims under the Fifth, Sixth and Eighth, and Fourteenth Amendments against Chief Brandon Kirkpatrick, and Officers Dominguez and Oakley, should be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Remaining are Plaintiff's wrongful search and seizure claims against the officers under the Fourth Amendment and his failure to supervise claim against the Chief.

**SIGNED this 22nd day of May, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE