**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| JEROMY ROBERTS, ) | |
| ID # 59855, ) | |
|     Plaintiff, ) | |
| vs. ) | No. 3:14-CV-812-N-BH |
| ) | |
| BRANDON KIRKPATRICK, et al. ) | |
|     Defendants. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this *pro se* prisoner case has been automatically referred for pretrial management. Before the Court is *Defendants Kilpatrick, Oakley and Dominguez' 12(b)(6) Motion to Dismiss Plaintiff's Complaint*, filed June 12, 2015 (doc. 34). Based on the relevant filings and applicable law, the motion should be **DENIED**.

**I. BACKGROUND**

While an inmate in the Hunt County Jail, Jeromy Roberts (Plaintiff) filed this action under 42 U.S.C. § 1983 against West Tawakoni Police Department Chief Brandon Kirkpatrick (Chief) and Police Officers Tyler Oakley and Charles Dominguez (Officers) in their individual capacities. (doc. 3 at 1, 3-4; doc. 8 at 1-5.)[1] Plaintiff alleges that on October 4, 2013, he was a passenger in a vehicle stopped by Officers. (doc. 3 at 4; doc. 8 at 3-4.) Officers allegedly searched the vehicle without a warrant and "supposedly" found drug paraphernalia, so they detained both occupants and took them to the Hunt County Jail, where they strip-searched them. (doc. 3 at 4.) Plaintiff claims that although drugs were found on the driver, and nothing was found on him, the officers charged him with possession of a controlled substance and possession of narcotic paraphernalia. (*Id.*; doc. 8 at 6-10.)

---

[1] Plaintiff's answers to the Court's questionnaires, (docs. 8, 21), constitute amendments to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

He was later also charged with theft. (doc. 21 at 5).

Plaintiff alleges that Officer Dominguez is Plaintiff's wife's ex-boyfriend, that he disagrees with their marriage, and that he had "verbally threatened to send him back to prison on a few separate instances". (doc. 3. at 4.) He claims that Officer Oakley participated in Officer Dominguez' violations of Plaintiff's civil rights, and that Chief (who is married to Plaintiff's wife's cousin) refused to investigate his complaints against Officers despite his knowledge of Officer Dominguez' issues with Plaintiff. (*Id.* at 4, 6; doc. 8 at 5.) Plaintiff seeks monetary damages from all three defendants, and to have them suspended. (doc. 3 at 4; doc. 8 at 1-4.)

## II.  MOTION TO DISMISS

Defendants move to dismiss this case pursuant to Rule 12(b)(6) for failure to state a claim that overcomes their qualified immunity defense. (docs. 34, 35.)

**A.     Rule 12(b)(6)**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).[2] It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). However, regardless of whether the plaintiff

---

[2] "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, Defendants do not rely on any matters outside of the pleadings in support of their motion to dismiss.

is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

3

**B.      Qualified Immunity**

Defendants argue that Plaintiff has failed to state a § 1983 claim upon which relief can be granted against them because they are protected by qualified immunity, and he failed to allege facts sufficient to overcome their assertion of the defense.

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-

prong inquiry. The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand.[3] *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'. . . is now advisory."). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Defendants argue that Plaintiff's complaint initially fails to plead sufficient facts to overcome their qualified immunity defense.

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To satisfy that burden on a motion to dismiss, the plaintiff must claim that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable. *Club Retro, LLC*, 568 F.3d at 194; *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). It is well-settled that the burden

---

[3] Because current law applies to the first prong but "the law at the time of the incident" applies to the second prong, two different tests may be applicable in a given case. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

5

does not shift to the plaintiff to demonstrate the inapplicability of the qualified immunity defense until the defendant has asserted it. *See Club Retro, L.L.C.*, 568 F.3d at 194; *McClendon*, 305 F.3d at 323.

Defendants cite *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); and *Brown v. Glossip*, 878 F.2d 871, 872 (5th Cir. 1989). (*See* doc. 35 at 3 n.15, 5.) Since those cases were decided, the Supreme Court has clearly held that plaintiffs are not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998). The Fifth Circuit has also since held that a plaintiff is not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12." *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc); *accord Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam). At the motion to dismiss stage, " it is the defendant's conduct as alleged in the complaint that is scrutinized for "objective legal reasonableness." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). Defendants' motion to dismiss is based on Rule 12(b)(6), and the analysis is restricted to the facts alleged in the complaint and answers to the questionnaires.[4]

Defendants' motion to dismiss Plaintiff's complaint on the ground that Plaintiff has not pleaded facts specifically addressing the facts alleged by Defendants in support of their assertion of qualified immunity should be denied.

---

[4] Defendants also argue that Plaintiff's allegations must engage their assertion of qualified immunity in their answer, and that the allegations in his complaint are insufficient to overcome their qualified immunity defense. (doc. 35 at 3 & n.7, 5.) They suggest in the alternative that Plaintiff may or should be *sua sponte* ordered to file a reply to the qualified immunity defense pursuant to Fed. R. Civ. P. 7a, as permitted under *Schultea v. Wood*, 47 F.3d at 1433. (doc. 35 at 5 n.30). Defendants have not moved for a Rule 7a reply.

6

**C.     Constitutional Violations**

Defendants move to dismiss on grounds that Plaintiff has not sufficiently asserted a violation of a constitutional right.

*1.     Fourth Amendment*

Plaintiff's allegations that Officers searched the vehicle in which he was a passenger without a warrant and charged him with possession of narcotics even though they knew that he was only a passenger implicate the Fourth Amendment of the United States Constitution.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, a search or seizure without probable cause or a warrant is a violation of the Fourth Amendment. *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir.2000); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir.1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."). Detaining a vehicle and its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

To analyze the legality of a traffic stop, the Fifth Circuit applies the two-part test set out in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Pack*, 612 F.3d at 349-50. First, courts determine whether the initial traffic stop was justified. *Id.* at 350. Upon finding that the stop was justified, courts then determine whether the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to initiate the stop. *Id.*

As noted, Plaintiff alleges that Officer Dominguez had verbally threatened to send Plaintiff back to prison because of his prior relationship with Plaintiff's wife's, and that he initiated the traffic

7

stop. (doc. 3 at 3, 4.) He claims Officers searched the vehicle in which he was a passenger without a warrant, "supposedly" found drug paraphernalia in the vehicle, searched him at the scene, strip-searched him at the police department, found nothing on his person, strip-searched the driver and found drugs on her, and "supposedly" found something in the car and "put it on me." (doc. 3. at 4.) Plaintiff alleges that Officer Oakley participated in the violation of his rights because he allowed Officer Dominguez to "take his personal issues and twist the law" and to charge Plaintiff for something even though he had been searched twice and nothing was found. (docs. 3 at 6; 8 at 3.) These factual allegations are sufficient to state a claim under the Fourth Amendment against Officers. The alleged Fourth Amendment violations are also objectively unreasonable violations of clearly established constitutional rights under the appropriate qualified immunity analysis of facts alleged in the complaint and in answers to questionnaires. Defendants' motion to dismiss on this ground should be denied.

### 2. *Failure to Supervise*

Plaintiff's allegations that Chief refused to investigate his complaints against Officers despite his knowledge of Officer Dominguez' issues with Plaintiff may be liberally construed as a claim that he failed to supervise Officers.

Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000).

There must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).

To establish liability on a failure to supervise or train claim, "the plaintiff must show that (1) [the supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir.2005). A negligent failure to train is insufficient; a plaintiff must show that the failure to train was done with "deliberate indifference" to his rights. *See Brd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997) ("A showing of simple or even heightened negligence will not suffice."). A showing of deliberate indifference usually requires "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights[.]" *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis*, 406 F.3d at 381.

Courts have consistently held that knowledge may be imputed to a supervisory official only in those cases where there is evidence of a history of widespread abuse, "and even then only when there is a causal connection between the failure to supervise or train and the constitutional violation, and the failure to supervise or train amounts to deliberate indifference." *Batiste v. City of Beaumont*, 421 F.Supp.2d 1000, 1006 (E.D. Tex. 2006). Plaintiffs must at least present evidence showing a pattern of similar violations. *See Estate of Davis*, 406 F.3d at 381; *Thompson*, 245 F.3d at 459. A

single incident of an alleged constitutional violation may serve as a basis for liability, however, if a plaintiff "prove[s] that the 'highly probable' consequence of a failure to train [or supervise] would result in the specific injury suffered, and that the failure to train [or supervise] represents the moving force behind the [c]onstitutional violation." *Estate of Davis*, 406 F.3d at 385-86. To prove the existence of deliberate indifference, Plaintiff must present evidence that Chief Kirkpatrick had notice of a pattern of *similar violations* in the past but failed to train or supervise, or that the highly predictable consequence of his failure to train or supervise was the injury to Plaintiff. *See id.* at 381-86; *Thompson*, 245 F.3d 458-59.

Here, Plaintiff's factual allegations that Chief knew of Officer Dominguez's prior threats towards Plaintiff, he failed to address those threats, and he failed to address complaints filed against Officer Dominguez both before and after the arrest event, state a plausible claim that the Chief's failure to supervise him resulted in injury to Plaintiff. *See Bell. Atlantic Corp.,* 550 U.S. at 570 (complaint must provide "enough facts to state a claim to relief that is plausible on its face"). He has sufficiently alleged that the Chief acted with deliberate indifference because he was both aware of facts from which the inference could be drawn that a substantial risk of serious harm towards Plaintiff existed, and that he drew that inference. *Estate of Davis*, 406 F.3d at 381. Plaintiff alleges that Chief was present when Officer Dominguez verbally threatened to send Plaintiff back to prison prior to the October 4, 2013 arrest. (doc. 3, at 4.) He also claims that the Chief "has acknowledged the arguments between me and his deputies [sic] Charles Dominguez #601 in the past, cause of the unneccessary [sic] threats Mr. Dominguez has made cause of a relationship he once had with my wife." (Doc. 8, at 5.) Plaintiff also alleges the Chief had a personal family connection with Plaintiff, and that "knowing his wife and my wife are cousins, so even though he wasn't there that night he's

10

just as guilty for allowing his deputy to harass me and deprive me of my freedom." (doc. 8, at 5.) Plaintiff also claims that the Chief "knew cause of a formal complaint that was written. [sic] Still didn't follow up on it knowing we were having issues before the night of the arrest." (doc. 8, at 1.) Plaintiff also alleges that "I know for a fact multiple complaints has [sic] been filed against Mr. Dominguez and the Chief refuses to follow up on it." (doc. 8, at 5.) He claims that a "formal complaint was given to the Chief cause of the night of Oct. 4, 2013. He would not follow up on it." (doc. 8, at 5.) He also alleges that the Chief allowed his officers to "run amuck and [let] his officers run a vigilante like department and take their personal issues with individual members of the community." (*Id.* at 2.)

Plaintiff has sufficiently alleged personal awareness by the Chief of prior threats by Officer Dominguez towards Plaintiff, combined with allegations that he failed to address multiple complaints against Officer Dominguez, both before and after Plaintiff's arrest, to state a claim that the Chief was "deliberately indifferent" to Officer Dominguez's violation of Plaintiff's constitutional rights. *See Estate of Davis,* 406 F.3d at 381-86. Plaintiff's factual allegations are therefore sufficient to state a claim against the Chief for failing to supervise Officer Dominguez. The alleged violations are also objectively unreasonable violations of clearly established constitutional rights under the appropriate qualified immunity analysis of facts alleged in the complaint and in answers to questionnaires. Defendants' motion to dismiss should be denied on these grounds.

## II. RECOMMENDATION

Defendants' motion to dismiss should be **DENIED**.

**SIGNED this 25th day of January, 2016.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE