IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEROMY ROBERTS, | ) | |
| ID # 59855, | ) | |
|     Plaintiff, | ) | |
| vs. | ) | No. 3:14-CV-812-N-BH |
| | ) | |
| BRANDON KIRKPATRICK, et al. | ) | |
|     Defendants. | ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this *pro se* prisoner case has been automatically referred for full case management. Before the Court is *Defendants Kilpatrick, Oakley and Dominguez' [sic] Motion for Summary Judgment*, filed March 17, 2016 (doc. 55). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

**I. BACKGROUND**

Jeromy Roberts (Plaintiff), an inmate in the Hunt County Jail, brings suit under 42 U.S.C. § 1983 against Chief of Police Brandon Kirkpatrick and Police Officers Tyler Oakley and Charles Dominguez (Defendants) in their individual capacities. (docs. 3 at 1, 3-4; 8 at 1-5.)[1] Defendants are employed by the West Tawakoni Police Department (WTPD) in West Tawakoni, Texas. (doc. 57 at 3-4.) Plaintiff alleges that Officer Dominguez is Plaintiff's wife's ex-boyfriend and has issues with him, that the officers falsely arrested him, and that the chief (who is married to Plaintiff's wife's cousin) failed to supervise them or investigate his complaints.[2] (*See* docs. 3, 8, 10, 21.)

On October 4, 2013, the officers were "on duty, in uniform and performing patrol duties in

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] On July 2, 2015, all claims against Defendants under the Fifth, Sixth, Eighth, and Fourteenth Amendments, and all claims against the other named defendants were dismissed as frivolous under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). (docs. 41, 42.)

a marked [WTPD] police vehicle." (doc. 57 at 11, 15.) They observed a vehicle and ran a database check on the license plate number. (*Id.* at 15.) The database check did not show that the vehicle was covered by insurance, so the officers initiated a traffic stop. (*Id.*) A female was driving the vehicle, and Plaintiff was sitting in the front passenger seat. (*Id.*) The officers learned that the driver did not have a driver's license, so both she and Plaintiff were asked to step out of the vehicle. (*Id.*)

The officers spoke with the driver and Plaintiff outside of the vehicle. (*Id.*) The driver then "consented to a search of the vehicle." (*Id.*) Under WTPD procedures, a vehicle may be searched without a warrant "with consent of the operator." (*Id.* at 9.) The procedures specify that "[t]he extent of a consent search depends upon the terms of the consent itself." (*Id.* at 10.) "If the consent is limited to specific areas of the vehicle, officers may search only portions of the vehicle covered by the consent." (*Id.*) During their search, the officers "found clear plastic bags known to be used in the sale of methamphetamine under the front passenger seat . . . and a water bottle with a homemade hidden compartment known to be used in the transport of narcotics . . . in the console located between the driver seat and front passenger seat." (*Id.* at 15.) "Because the drug paraphernalia was located at [Plaintiff's] feet and within his reach, he was arrested for possession of drug paraphernalia." (*Id.*) The driver was also arrested because she had no license. (*Id.* at 15-16.)

The driver and Plaintiff were placed in the backseat of the officer's police vehicle for transport to the Hunt County Jail. (*Id.* at 16.) When Plaintiff was removed from the vehicle, the officers "discovered pills and a baggie in the back seat where he had been sitting" that were later identified as Hydrocodone and methamphetamine. (*Id.*) Plaintiff was additionally charged with possession of a controlled substance. (*Id.*)

The chief was not on duty at the time of Plaintiff's arrest or made aware of the arrest until "much later." (*Id.* at 3.) After he "became aware that [Plaintiff] wanted to make a complaint about Officer Dominguez," he personally drove 23 miles to the Hunt County Jail and delivered to Plaintiff the forms necessary to make a complaint of misconduct. (*Id.* at 6.) Plaintiff never returned the forms and the chief was unable to locate him later. (*Id.*) "West Tawakoni practice requires a sworn complaint and this is required under State law before any discipline can occur on a complaint against an officer." (*Id.*) "Without the sworn complaint and completion of the forms[, the chief] was unable to investigate the complaint." (*Id.*)

Officer Dominguez had been hired by WTPD in June of 2011, and Officer Oakley had been hired on August 8, 2013. (*Id.* at 4.) The chief personally reviewed their applications and verified that they complied with all training criteria and requirements of the State of Texas, as set forth by Texas Commission on Law Enforcement (TCOLE), at the time they were hired and at all times during their employment by the City of West Tawakoni. (*Id.*) According to the chief, "At all times during the tenures of Officers Oakley and Dominguez and at the present time., [sic] the policy of the City of West Tawakoni prohibited unlawful arrest; required officers to protect the legal rights of persons in custody; and, [sic] permitted vehicle searches on in [sic] limited lawful circumstances including operator consent." (*Id.* at 5.)[3]

At some point after Officer Dominguez was hired, Chief Kirkpatrick heard a rumor that "he might be associated with [Plaintiff's] ex-wife who was known to [him] to be engaged in drug and criminal activities." (*Id.* at 6.) Through conversations with Officer Dominguez, personal

---

[3] On January 14, 2014, Officer Oakley left his employment with WTPD in good standing to take a position with another police department. (*Id.*) Officer Dominguez left his employment with WTPD in good standing to take a position with another police department in February of 2015. (*Id.*)

observation, and investigation, he "confirmed the rumor to be untrue." (*Id.*) He was aware of Plaintiff's allegation that his wife and Plaintiff's ex-wife were cousins, but that is "not true." (*Id.*)

On March 17, 2016, Defendants moved for summary judgment. (docs. 55, 56.) Plaintiff did not respond, and the motion is now ripe for recommendation.

### III. SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). The non-movant must identify specific evidence

4

in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Although courts view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.[4]

Where, as here, the nonmovant fails to respond to the motion for summary judgment, this failure does not allow the court to enter a default summary judgment. *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277 (5th Cir. 1985) (citing *John v. La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)). "A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). If the nonmovant filed a sworn complaint, however, the sworn complaint may serve as competent summary judgment evidence "to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam); *accord Barnes v. Johnson*, 204 F. App'x 377,

---

[4] Although courts generally liberally construe the pleadings of a *pro se* plaintiff, *see Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam), Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). The responding party's burden is not abandoned in *pro se* prisoner cases. *Castillo v. Bowles*, 687 F. Supp. 277, 280 (N.D. Tex. 1988).

378 (5th Cir. 2006). In addition, when the nonmovant fails to respond, the movant's evidence may be accepted as undisputed. *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (citing *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman*, 945 F. Supp. at 1002)

Even though Defendants have no burden to provide evidence, they have submitted affidavits and excerpts from WTPD written directives. (*See* doc. 57.) They have carried their summary judgment burden by asserting the qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden is now on Plaintiff to produce evidence showing they are not entitled to qualified immunity.

## IV. QUALIFIED IMMUNITY

Defendants move for summary judgment on grounds that they are protected from suit by qualified immunity. (docs. 55 at 1; 56 at 3-10.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To prevail in a § 1983 claim, a plaintiff must show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818

6

(1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 555 U.S. at 236; *Lytle v. Bexar Cty.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Defendants have carried their summary judgment burden by asserting their qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden now shifts to Plaintiff to produce evidence showing that Defendants violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).

7

## V. CONSTITUTIONAL VIOLATION

Defendants contend that there is no credible evidence of a Fourth Amendment constitutional violation and that he cannot overcome their entitlement to qualified immunity. (doc. 55 at 1-2.)

### A. **Fourth Amendment**

Plaintiff alleges that the officers searched the vehicle in which he was a passenger without a warrant in violation of the Fourth Amendment and charged him with possession of narcotics even though they knew he was only a passenger. (docs. 3 at 3; 8 at 3-4.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, a search or seizure without probable cause or a warrant is a violation of the Fourth Amendment. *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."). Detaining a vehicle and its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

To analyze the legality of a traffic stop, the Fifth Circuit applies the two-part test set out in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Pack*, 612 F.3d at 349-50. First, courts determine whether the initial traffic stop was justified. *Id.* at 350. Upon finding that the stop was justified, courts then determine whether the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to initiate the stop. *Id.*

Here, even though Defendants have asserted qualified immunity and thereby met their initial burden, they have also submitted affidavits regarding the stop of the vehicle by the officers; the

8

driver's consent for the officers to search the vehicle; the officer's conduct during the search; the officers finding drugs and items associated with the sale of drugs in the vehicle; taking Plaintiff and the driver to the Hunt County Jail; and the officers discovering additional drugs in the back seat where Plaintiff had been seated in the back of the police vehicle. (*See* doc. 57 at 11-17.) Defendants have also submitted excerpts from WTPD written directives that address WTPD's official procedures for vehicle searches, both with the consent of the operator and incident to an arrest of the occupants of the vehicle. (*Id.* at 7-10.)

Plaintiff did not respond to Defendants' motion for summary judgment. His sworn complaint may serve as competent summary judgment evidence "to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King*, 31 F.3d at 346 (citation omitted). As noted, the responding party on summary judgment must "identify *specific evidence* in the record" supporting challenged claims and "articulate the *precise manner* in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (emphasis added) (citing *Forsyth*, 19 F.3d at 1537). Because Plaintiff has neither identified specific evidence in the record nor articulated the precise manner in which it supports his claims, he has not brought forward sufficient evidence to support a resolution in his favor on whether the officers violated his constitutional rights. *See Castillo v. Bowles*, 687 F. Supp. 277, 280 (N.D. Tex. 1988) ("[T]he requirement that the party with the burden of proof set forth specific facts supporting his claim in response to a motion for summary judgment is not abandoned in *pro se* prisoner cases."); *see also Williams v. Valenti*, 432 F. App'x 298, 303 (5th Cir. 2011) (per curiam) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.") (citation omitted).

9

Even considering Plaintiff's sworn complaint, however, he still fails to meet his burden of showing that qualified immunity does not apply. Plaintiff provides only his personal belief Officer Dominguez had a prior history with Plaintiff's ex-wife, that the officers searched the vehicle without probable cause, and that they "illegally" restrained him. (*See* docs. 3 at 3-4; 8 at 3-4.) Accordingly, Plaintiff has not met his summary judgment burden to identify a genuine issue of material fact as to whether his Fourth Amendment rights were violated. *See Turner*, 476 F.3d at 343. The officers are therefore entitled to qualified immunity on the false arrest claim.

**B.     Failure to Supervise**

Plaintiff appears to allege that the chief failed to supervise the officers in that he refused to investigate Plaintiff's complaints despite his knowledge of Officer Dominguez's alleged issues with him. (docs. 3 at 3; 8 at 1-2.)

Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: (1) the supervisor's conduct directly caused a constitutional violation; or (2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). There must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).

To establish liability on a failure to supervise or train claim, "the plaintiff must show that (1) [the supervisor] failed to supervise or train the officer; (2) a causal connection existed between the

10

failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005). A negligent failure to train is insufficient; a plaintiff must show that the failure to train was done with "deliberate indifference" to his rights. *See Brd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997) ("A showing of simple or even heightened negligence will not suffice."). A showing of deliberate indifference usually requires "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights[.]" *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis*, 406 F.3d at 381.

Courts have consistently held that knowledge may be imputed to a supervisory official only in those cases where there is evidence of a history of widespread abuse, "and even then only when there is a causal connection between the failure to supervise or train and the constitutional violation, and the failure to supervise or train amounts to deliberate indifference." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 1000, 1006 (E.D. Tex. 2006). Plaintiffs must at least present evidence showing a pattern of similar violations. *See Estate of Davis*, 406 F.3d at 381; *Thompson*, 245 F.3d at 459. A single incident of an alleged constitutional violation may serve as a basis for liability, however, if a plaintiff "prove[s] that the 'highly probable' consequence of a failure to train [or supervise] would result in the specific injury suffered, and that the failure to train [or supervise] represents the moving force behind the [c]onstitutional violation." *Estate of Davis*, 406 F.3d at 385-86. To prove the existence of deliberate indifference, Plaintiff must present evidence that the chief had notice of a

11

pattern of *similar violations* in the past but failed to train or supervise, or that the highly predictable consequence of his failure to train or supervise was the injury to Plaintiff. *See id.* at 381-86; *Thompson*, 245 F.3d 458-59.

Here, even though Defendants have asserted qualified immunity and thereby met their initial burden, they have also submitted affidavits regarding the officers' hiring, their training during their tenure at WTPD, the chief's investigation into Officer Dominguez's alleged relationship with Plaintiff's ex-wife, and the alleged relationship between the chief's wife and Plaintiff's ex-wife. (*See* doc. 57.) Defendants have also submitted excerpts from WTPD written directives regarding probable cause, procedures for searching vehicles, and protection of prisoners rights and their parties. (*Id.* at 7-10.)

As with his Fourth Amendment claim, Plaintiff has neither identified specific evidence in the record nor articulated the precise manner in which it supports his claims, and he has not brought forward sufficient evidence to support a resolution in his favor on whether the chief violated his constitutional rights. *See Castillo*, 687 F. Supp. at 280; *see also Williams*, 432 F. App'x at 303. Even if Plaintiff's sworn complaint is considered, he still fails to meet his burden. His summary judgment evidence amounts to only general allegations that Officer Dominguez had issues with him because of his prior relationship with Plaintiff's wife, the chief ignored his complaints against the officers, he would not follow up with Plaintiff or investigate his complaint, the chief's wife is related to Plaintiff's wife, and the "whole department is crooked." (*See* docs. 3 at 4, 6; 8 at 1-2, 5.) Because his statements amount to mere conclusory allegations and unsubstantiated assertions, his summary judgment evidence is insufficient to meet his burden. *See Turner*, 476 F.3d at 343. The chief is therefore entitled to qualified immunity on the failure to supervise claim against him.

12

## VI. RECOMMENDATION

Defendants' motion for summary judgment should be **GRANTED**.

**SO RECOMMENDED** on this 26th day of October, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE